No. 492        July 10, 2024        777

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of D. J. R.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

D. J. R.,
*Appellant.*

Yamhill County Circuit Court
19JU07275; A179417

Jennifer K. Chapman, Judge.

Submitted January 9, 2024.

Erica Hayne Friedman and Youth, Rights & Justice filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Youth appeals a judgment revoking his probation, committing him to Oregon Youth Authority (OYA) custody, and recommending placement in a youth correctional facility. Youth raises two assignments of error. In a combined argument, youth argues that the juvenile court erred by ordering youth's continued commitment to OYA custody instead of committing him to Department of Human Services (DHS) custody. For the following reasons, we affirm.

In 2019, the juvenile court found youth within its jurisdiction for conduct which, if committed by an adult, would constitute rape in the first degree, ORS 163.375, and sexual abuse in the first degree, ORS 163.427. The court committed youth to OYA custody and placed him on probation for five years. In 2022, the state alleged that youth had violated the conditions of his probation. At the contested probation revocation hearing, youth admitted that he had violated the conditions of his probation and argued that the juvenile court should commit him to DHS custody. After acknowledging that youth had "a lot of challenges [he has] had to deal with through no fault of [his] own" and that it was "a very far way away from giving up on [him]," the juvenile court revoked youth's probation. The court found that,

> "pursuant to ORS 419C.478(1), it is in the best interest and welfare of the youth that he be placed in the legal custody of the Oregon Youth Authority, State of Oregon, for placement in a youth correctional facility. There is no less restrictive placement that will assure the youth will conform his conduct to the law and other conditions that may be imposed to protect the best interests of the youth or community."

This appeal followed.

We begin with youth's argument that the juvenile court erred when it committed youth to OYA custody because the court's "conclusion that it was in [youth's] best interest to be committed to OYA custody for incarceration in a youth correction facility was clearly against logic and the evidence."

We review a court's best interests determination for abuse of discretion. *Sjomeling v. Lasser*, 251 Or App 172, 187,

285 P3d 1116, *rev den*, 353 Or 103 (2012). "Thus, we will reverse only if a trial court's discretionary determination is not a legally permissible one." *Id.*

ORS 419C.478(1) provides:

> "The court may, in addition to probation or any other dispositional order, place an adjudicated youth who is at least 12 years of age in the legal custody of the Oregon Youth Authority for care, placement and supervision or, when authorized under subsection (3) of this section, place an adjudicated youth in the legal custody of the Department of Human Services for care, placement and supervision. In any order issued under this section, the court shall include written findings describing why it is in the best interests of the adjudicated youth to be placed with the youth authority or the department."

"A best interests assessment is a child-focused consideration and must be child-centered." *State v. D. B. O.*, 325 Or App 746, 748, 529 P3d 1004 (2023) (internal quotation marks omitted). Further, ORS 419C.411(3) requires a juvenile court to consider several factors "in determining the disposition of the case," including "[w]hether the manner in which the adjudicated youth engaged in the conduct was aggressive, violent, premediated or willful" and the youth's "juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders."

We have reviewed the record and conclude that the juvenile court did not abuse its discretion. The record contained evidence that youth was "experiencing frequent violation ideation," that he had exhibited volatile conduct while in OYA custody, and that he had run away from an OYA facility. In addition, youth's probation officer testified that youth "did do a lot better in very structured, very firm restricted environments" and the psychologist who recently evaluated youth testified that he had concerns about youth "being unsupervised in the community." The psychologist also noted that youth used violence as a coping mechanism. In determining that it was in youth's best interests to be placed in OYA custody, the court found, in relevant part: "Youth needs the heightened structure of a youth correctional facility because of behavior and mental health

concerns" and "[t]ransition to a less restrictive setting than a correctional facility, such as a proctor home or foster care, would require planning and preparation that has not yet been done." Because the juvenile court considered the relevant facts and circumstances to make its discretionary determination that it was in youth's best interests to be placed in OYA custody, its decision was legally permissible.

As a consequence, we do not reach youth's arguments that it was in his best interests to be committed to DHS custody and that the requirements of ORS 419C.478(3) were satisfied.

Affirmed.